*Decisions of no deficiency and no overpayment will be entered.*

MICHAEL DIPEPPINO, INC., d.b.a. MICHAEL TRANSFER, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21497–83.     Filed December 27, 1984.

*William W. Weintraub,* for the petitioner.
*Steve Mather,* for the respondent.

subtracted from the sale price of the product to determine 'gross income from the property.' "[Emphasis supplied.]"

OPINION

## Background

JACOBS, *Judge*: This case is before us on petitioner's motion to place upon respondent the burden of proving that petitioner permitted its earnings and profits to accumulate beyond its reasonable business needs pursuant to section 534(a)(1).[1] On September 17, 1982, following an examination of petitioner's taxable years ended March 31, 1980 and 1981, respondent sent petitioner, by ordinary mail, notification that he intended to increase (for both years in question) petitioner's tax liability and that such increase included an amount with respect to the accumulated earnings tax imposed by section 531. This notification is commonly known as the 30-day letter. Enclosed with the 30-day letter was a copy of the revenue agent's examination report in which the agent concluded that for both years in question, petitioner permitted its retained earnings to accumulate beyond the reasonable needs of its business. On September 29, 1982, petitioner filed a written protest with regard to the findings of the revenue agent (as set forth in the examination report) and requested an appeals hearing. Fearing the expiration of the limitations period for assessment, and unable to obtain from petitioner an agreement to extend such period, respondent, on April 26, 1983, sent a notice of deficiency to petitioner. The amount of the proposed deficiency was based, in part, on the accumulated earnings tax as asserted in the 30-day letter.

Prior to the calendaring of this case for trial, petitioner filed a motion requesting the Court to determine whether respondent's 30-day letter was sufficient under section 534(b)[2] to

---

[1]All section references are to the Internal Revenue Code of 1954 as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Sec. 534(a)(1) provides:

SEC. 534(a). GENERAL RULE.—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall—

(1) if notification has not been sent in accordance with subsection (b), be on the Secretary* * *

[2]Sec. 534(b) provides:

SEC. 534(b). NOTIFICATION BY SECRETARY.—Before mailing the notice of deficiency referred to in subsection (a), the Secretary may send by certified mail or registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531.

place on petitioner the burden of proving whether, in the years involved, petitioner accumulated its earnings and profits beyond its reasonable business needs. Petitioner contends that respondent did not comply with the notification mailing requirement of section 534(b) because (1) the 30-day letter was sent by ordinary mail rather than by certified or registered mail, and (2) in any case, the 30-day letter is not the proper notification required by section 534(b).[3] Respondent counters that (1) petitioner's motion is premature, (2) section 534(b) does not require that the notification letter be sent by certified or registered mail, and (3) the 30-day letter constitutes the requisite notification under section 534(b).

## Discussion

In general, the Commissioner's determination is presumed correct, and the petitioner has the burden of proving it wrong. *Welch v. Helvering*, 290 U.S. 111 (1933). Rule 142(a). However, section 534(a) provides an exception to this general rule where the notice of deficiency is based, in whole or in part, on the allegation that the taxpayer permitted its earnings and profits to accumulate beyond its reasonable business needs. In such case, the burden of proving such allegation is placed on respondent where (1) respondent does not send notification in the manner prescribed by section 534(b) that the forthcoming notice of deficiency will include a proposed assessment of tax under section 531, or (2) having received said notification, the taxpayer submits to respondent a statement described in section 534(c).[4]

The issue to be resolved herein is whether the sending by ordinary mail of respondent's 30-day letter satisfied the requirements of section 534(b), i.e., whether such notification operated to place upon petitioner the burden of proving that it

---

[3]The 30-day letter was the only notification mailed to petitioner (prior to the mailing of the notice of deficiency) informing it that the Commissioner intended to impose the accumulated earnings tax for its taxable years ended Mar. 31, 1980 and 1981.

[4]Sec. 534(c) provides:

SEC.534(c). STATEMENT BY TAXPAYER.—Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.

did not accumulate its earnings and profits beyond its reasonable business needs. As a preliminary matter, we must decide if it is proper at this time to consider petitioner's motion.

Respondent cites *Shaw-Walker Co. v. Commissioner*, 39 T.C. 293 (1962), *Chatham v. Commissioner*, 48 T.C. 145 (1967), and Rule 142(e) to support his contention that petitioner's motion should not be considered until the case has been calendared for trial. Respondent's reliance on the above authorities is misplaced since each such authority concerns the inquiry involved in determining the sufficiency of the statement described in section 534(c), not the inquiry involved in the determination of the sufficiency of the notification required under section 534(b).

Nor can the rationale behind those authorities be carried over to the present controversy. While both inquiries are procedural, deciding the sufficiency of the section 534(c) statement requires a probing examination of the underlying facts of the case, whereas deciding the notification mailing requirement of section 534(b) does not. See, e.g., *Rutter v. Commissioner*, 81 T.C. 937 (1983).

The purpose of the section 534(c) statement is to describe the grounds on which the taxpayer relies in claiming that it did not accumulate earnings and profits beyond its reasonable needs. Such statement must include facts sufficient to show the basis for these grounds. While the court need not decide if the statement is convincing (*Motor Fuel Carriers, Inc. v. Commissioner*, 559 F.2d 1348 (5th Cir. 1977), revg: and remanding a Memorandum Opinion of this Court), a determination must be made as to the sufficiency of the taxpayer's asserted grounds. To do so, the trier must become familiar with the facts of the case. Therefore, for the sake of judicial economy and fairness to the parties, it is logical to require a motion regarding the section 534(c) statement to be decided only after the case had been calendared.

However, section 534(b) in effect allows respondent to place the burden of proof on the taxpayer by sending by certified or registered mail a notification informing the taxpayer that the proposed notice of deficiency will include an amount with respect to the accumulated earnings tax. The section 534(b) notification must be sent prior to the mailing of the notice of deficiency. An inquiry as to the sufficiency of a section 534(b)

notification requires only an investigation of the procedural questions involved—was notification sent, how was it sent, and did it notify the taxpayer that he would receive a notice of deficiency containing the assertion of the accumulated earnings tax. This inquiry does not require an examination of the sufficiency of the content of the section 534(b) notification in relation to the facts of the particular case, as does the statement under section 534(c). The policy considerations behind postponing the decision of a motion involving the sufficiency of a section 534(c) statement until the case has been calendared does not apply to a motion involving section 534(b). Therefore, we believe that we may properly consider petitioner's motion at this point in the controversy.

Petitioner contends that the notification, having been sent by ordinary mail rather than certified or registered mail, is deficient under the statute and therefore ineffective to place the burden of proof on petitioner. He also contends that the 30-day letter is a "proposed notice of deficiency" and therefore it cannot simultaneously be considered the section 534(b) notification of a proposed notice of deficiency, and that it does not provide him with the requisite notice which respondent's standard form of notification does.[5]

Answering petitioner's first argument, respondent maintains that the word "may" in section 534(b) is permissive; therefore, the section permits, but does not require, certified or registered mailing of the notice. Respondent argues that an ordinary mailing, as long as it provides petitioner with actual notice, is sufficient and within the contemplation of section 534(b). Recognizing that this is an issue of first impression, respondent draws a parallel to cases interpreting section 6212(a)[6] to support his position.

---

[5]There is no statute, regulation, or ruling dictating the form of the sec. 534(b) notification or its contents. The standard procedure followed by respondent when sending the sec. 534(b) notification is to send a form letter (number 1541(P)) containing references to the inclusion in the proposed notice of deficiency of the accumulated earnings tax, sec. 534, and the taxpayer's statement under sec. 534(c).

In this instance, respondent chose to substitute the 30-day letter for his standard form letter. The 30-day letter made no reference to any statement petitioner might make under sec. 534(c) nor to section 534.

[6]Sec. 6212(a) provides:

SEC. 6212(a). IN GENERAL.—If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

In analogizing the language of section 534(b) to that of section 6212(a), respondent has concluded, by virtue of cases interpreting the language of the latter statute, that when Congress wrote "Before mailing the notice of deficiency referred to in subsection (a), the Secretary *may* send by certified mail or registered mail a notification" (emphasis supplied), it meant simply that respondent may choose to mail such notification in any way he desired, including by registered or certified mail, and in those cases in which he mails the notification and the taxpayer is given actual notice, the burden of proof is placed on petitioner, subject to section 534(c).[7] In so concluding, respondent relies primarily on *Boren v. Riddell*, 241 F.2d 670 (9th Cir. 1957). That case holds that where section 6212(a) states that respondent is "*authorized* to send a notice of * * * deficiency to the taxpayer by certified mail or registered mail" (emphasis supplied), the word "authorized" is permissive. Thus, respondent may send the notice of deficiency in any way that suffices to give the taxpayer actual notice. Respondent argues that the word "may" in section 534(b) conveys as broad a license as does the word "authorized" and that since petitioner (in this case) was given actual, timely notice of the information in the notification, as was the taxpayer in *Boren*, our decision herein should be controlled by the holding in *Boren.*

We read section 534(b) differently than respondent does and therefore do not find *Boren* controlling. The word "may" as used in section 534(b) does not denote a choice with respect to the *means* by which the notice is to be effected, as respondent apparently believes. The choice given to respondent is whether or not to send notification under section 534(b).

Respondent has the option of sending the notification before mailing the notice of deficiency. If he chooses not to exercise that option, he retains the burden of proof as to matters underlying the accumulated earnings tax. But if he exercises that option, he must do so as prescribed by the statute, i.e., by certified or registered mail. To put it another way, the

---

[7]Respondent's interpretation is at variance with the position which he takes in Rev. Proc. 56–11, sec. 2.01, 1956–1 C.B. 1028, wherein it is provided that the notification pursuant to sec. 534(b) *must* be sent by registered mail. While the language of the statute has changed somewhat since the ruling was published, none of the language relevant to this matter has been changed. The revenue procedure has not, as of this date, been superseded or revoked.

permissive language of the statute refers to the action respondent might take, not the manner in which he might perform it. Any other reading of the statute would render superfluous the specific identification by Congress of modes of mailing.

*Boren* can be read as heralding the guiding principle of liberal statutory construction where such a construction serves "to give effect to the manifest intent of Congress." 241 F.2d at 672. Congress' intent in drafting section 6212(a) was to ensure that the taxpayer had actual notice of a deficiency determination so that he would have sufficient time to petition this Court. Interpreting the statute to permit any mailing promoted this intent. But the underlying rationale of *Boren* does not apply to the instant case for two reasons.

Firstly, as discussed above, the permissive language of section 534(b) does not relate to the manner of mailing, but rather to the fundamental choice of sending the notification. On the other hand, the word "authorized" as used in section 6212(a) refers to the manner in which respondent may send the notice of deficiency.

Secondly, whereas a liberal construction of section 6212(a) in favor of the Government gives effect to Congress' manifest intent, such a liberal construction would run counter to the legislative intent underlying section 534(b).

While sections 6212(a) and 534(b) both serve a notice function, the purposes underlying each are completely distinct. Compliance with section 6212(a) is a prerequisite to respondent's ability to assess a deficiency (section 6213(a)) and notifies the taxpayer of an intended deficiency assessment so that he may invoke the jurisdiction of this Court and contest the propriety of such proposed deficiency before assessment. Congress had no underlying purpose other than simply to place into motion the mechanism by which the taxpayer may invoke his legal rights. Therefore, once the taxpayer has actual notice, Congress' intent has been satisfied. As discussed *supra*, the manner in which such actual notice is obtained is not critical.

Section 534, on the other hand, was intended to redress abuses that had arisen in the audit process. As stated in the committee reports for both the House Ways and Means Committee and the Senate Finance Committee:

[the] imposition of the burden of proof on the taxpayer has had several undesirable consequences. The poor record of the Government in the litigated cases in this area indicates that deficiencies have been asserted in many cases which were not adequately screened or analyzed. At the same time taxpayers were put to substantial expense and effort in proving that the accumulation was for the reasonable needs of the business. Moreover, the complaints of taxpayers that the tax is used as a threat by revenue agents to induce settlement on other issues appear to have a connection with the burden of proof which the taxpayer is required to assume. It also appears probable that many small taxpayers may have yielded to a proposed deficiency because of the expense and difficulty of litigating their case under the present rules. [H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 52 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 70 (1954).]

The manifest intent of Congress was to ensure that respondent act responsibly in asserting any deficiencies in the accumulated earnings tax by requiring him to carry the burden of proof unless he follows statutorily dictated procedure.[8] See *Manson Western Corp. v. Commissioner*, 76 T.C. 1161, 1164 (1981).

As section 534(b) is an integral part of the statutory mechanism, respondent cannot be allowed to place the burden of proof on the taxpayer without strict adherence to the letter of this subsection. A liberal construction of section 534(b), as employed by the court in *Boren* in interpreting section 6212(a), would defeat, rather than effectuate, the manifest intent of Congress.

Having held that respondent's mailing of the section 534(b) notification by ordinary mail is deficient, we need not address

---

[8]This apparently is still a matter of concern for Congress. In a letter dated July 26, 1984, from Congressman Fortney H. (Pete) Stark, Chairman of the Subcommittee on Select Revenue Measures of the House Ways and Means Committee, to Ronald A. Pearlman, Acting Assistant Secretary of the Treasury in charge of the Tax Policy, regarding sec. 58 of H.R. 4170, which enacted sec. 532(c), Congressman Stark expressed concern that the amendment should not be used to "substantially increas[e] the instances in which the Service raises this issue in audits of public operating companies, either as a bargaining chip to pressure resolution of other issues, or to challenge, by the use of hindsight, decisions of management that are reasonable under the circumstances when made." He "assumed" that the Internal Revenue Service would instruct agents against engaging in such behavior. In his reply, dated Sept. 5, 1984, Mr. Pearlman acknowledged that the "assertion of liability for any tax merely for the purpose of obtaining a tactical advantage would be improper, and a source of serious concern to the Service." See Tax Notes, Aug. 27, 1984, at 830; Tax Notes, Oct. 1, 1984, at 21.

petitioner's other argument regarding whether the 30-day letter is the proper notification required by section 534(b). Accordingly,

*Petitioner's motion will be granted.*